| | |
|---|---|
| GPI, LLC,<br><br>                Plaintiff,<br><br>         v.<br><br>DOUBLE D GOOSE CONTROL LLC d/b/a<br>GEESE POLICE OF DC; DAVID S. MARCKS;<br>DOUGLAS MARCKS; AND MICHAEL GAY,<br><br>               Defendants. | Civil Action No._____ |

## COMPLAINT

Plaintiff GPI, LLC, by way of a Complaint against Defendants Double D Goose Control LLC d/b/a Geese Police® of DC; David S. Marcks; Douglas Marcks; and Michael Gay allege as follows:

## NATURE OF THE ACTION

1. This civil action is brought by a franchisor, GPI, LLC ("GPI" or "Franchisor"), against a former franchisee, Double D Goose Control LLC d/b/a Geese Police® of DC; David S. Marcks; Douglas Marcks; and Michael Gay (collectively, "Defendants"), pursuant to a Franchise Agreement that has since terminated when the former franchisee, after notice and opportunity to cure, failed to cure numerous defaults under the Franchise Agreement.

2. David S. Marcks, Douglas Marcks, and Michael Gay personally guaranteed that all of the franchisee's obligations under the Franchise Agreement would be punctually paid and performed, and they agreed to be individually bound by the covenants in Section 9 (Confidential Information) and Section 16 (Covenant Not to Compete), pursuant to a Guarantee,

Indemnification, and Acknowledgement attached to the Franchise Agreement and executed by them.

3.      Franchisor brings this action to enforce the narrowly crafted covenant not to compete against its former franchisee and to prevent that former franchisee from engaging in unfair competition under the Lanham Act and for infringing the Franchisor's trademarks and service marks.  Franchisor also seeks to recover the tens of thousands of dollars that remain due and payable from Defendants to the Franchisor under the Franchise Agreement.

## JURISDICTION AND VENUE

4.      The Court has: (a) subject matter jurisdiction over the federal trademark and service mark infringement claims under the Lanham Act pursuant to 28 U.S.C. § 1331 and § 1338(a); and (b) subject matter jurisdiction over the unfair competition claim under the Lanham Act pursuant to 28 U.S.C. § 1338(a) and § 1338(b).

5.      The Court also has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a) because that claim is so related that they form part of the same case or controversy.

6.      The Court has personal jurisdiction over Double D Goose Control LLC because that entity has its principal place of business in Fairfax County, Virginia, and regularly conducts business in Northern Virginia.

7.      The Court has personal jurisdiction over the individual Defendants because each of them resides in and transacts business within the Commonwealth of Virginia and the Eastern District of Virginia District, and they otherwise committed acts of unfair competition and trademark infringement and breached their contract within this District.

8.     Venue over this action is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Double D maintains a principal place of business within the Alexandria Division of the U.S. District Court for the Eastern District of Virginia, and all Defendants are residents of the Commonwealth of Virginia.  Venue over this action is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and omissions occurred in this judicial district, namely the partial performance and breach of the Franchise Agreement, as well as the use and infringement of the Geese Police Marks.

## PARTIES

9.     Plaintiff GPI, LLC is a New Jersey limited liability company having its principal place of business in Pennsylvania ("GPI" or "Franchisor").  GPI is the Franchisor.

10.     Defendant Double D Goose Control LLC d/b/a Geese Police® of DC is a Virginia limited liability company with its principal place of business in Fairfax County, Virginia ("Defendant Double D") and is a former franchisee.

11.     Defendant David S. Marcks resides in Virginia, and he is a co-owner of the former franchisee and an individual guarantor of the franchisee obligations under the Franchise Agreement ("Defendant David").

12.     Defendant Douglas Marcks resides in Virginia, and he is a co-owner of the former franchisee and an individual guarantor of the franchisee obligations under the Franchise Agreement ("Defendant Doug").

13.     Defendant Michael Gay resides in Virginia, and he is a co-owner of the former franchisee and an individual guarantor of the franchisee obligations under the Franchise Agreement ("Defendant Gay" and together with Defendant David and Defendant Doug, the "Individual Defendants").

**FACTS**

***Franchisor Spends Considerable Time, Effort, Resources, and Funds Developing the Marks and System Under Which the Franchise Identified as GEESE POLICE® is Operated***

14.     For over twenty years, Franchisor has been engaged in the franchising of a franchise system consisting of distinctive formats, designs, specifications, methods, standards, operating procedures and guidance for Canadian goose/bird control franchises, which use highly trained working border collies to herd Canadian geese off a client's property in a waterfowl-friendly manner (the "Franchised Business").  With waterfowl protective statutes in place, the practices employed by the Franchised Business are one of the few means of dealing with messy Canadian geese in a lawful manner.

15.     Franchisor has eleven franchisees licensed throughout the United States (excluding the Defendants' franchisee, which has since been terminated).

16.     Franchisor's primary trademark and service mark is the composite of the words GEESE POLICE® and the design as shown below:



17.     The composite service mark shown above was registered by Geese Police, Inc., an affiliate of Franchisor through common ownership, under U.S. Registration No. 2,378,757 on or about August 22, 2000.  A true and correct copy of the results of a trademark electronic search

conducted on the United States Patent and Trademark Office site, is attached hereto as **Exhibit A**, and incorporated herein by reference (the "Composite Mark").

18.     Since August 22, 2000, Geese Police, Inc. has permitted Franchisor to license the Composite Mark for use in the Franchised Business, and Franchisor has continuously used the Composite Mark as its trademark and service mark.

19.     Under the same arrangement with Geese Police, Inc., Franchisor also uses three additional trademarks and service marks, all of which have been registered by Geese Police, Inc. with the United States Patent and Trademark Office.

20.     The trademark and service mark CALL US TO . . . GET THE FLOCK OUT!® was registered by Geese Police, Inc. under U.S. Registration No. 2,680,858 on or about January 28, 2003.  A true and correct copy of the results of a trademark electronic search conducted on the United States Patent and Trademark Office site, is attached hereto as **Exhibit B** and incorporated herein by reference.

21.     The trademark and service mark GEESE POLICE® was registered by Geese Police, Inc. under U.S. Registration No. 3,257,763 on or about July 3, 2007.  A true and correct copy of the results of a trademark electronic search conducted on the United States Patent and Trademark Office site, is attached hereto as **Exhibit C** and incorporated herein by reference.

22.     The trademark and service mark set forth below – consisting of the words "GEESE POLICE" with the "L" in "POLICE" represented by the shape of a floating goose and the design below – was registered by Geese Police, Inc. under U.S. Registration No. 4,294,452 on or about February 26, 2013.  A true and correct copy of the results of a trademark electronic search conducted on the United States Patent and Trademark Office site, is attached hereto as **Exhibit D** and incorporated herein by reference.



23.    **Exhibits A-D** described above are collectively referred to herein as the "Geese Police Marks" or the "Proprietary Marks."  The Geese Police Marks are currently valid and enforceable.

24.    Franchisor also owns and uses distinctive business methods in the operation of the Franchise Business.  These distinctive business methods, together with the other benefits of being a franchisee, including use of the Geese Police Marks, shall hereinafter be referred to as the "Geese Police System."

25.    As part of the Geese Police System, Franchisor provides its franchisees with training in Franchisor's methods of doing business and with the experience, expertise, and know-how of the Franchisor in the operation of the Franchised Business (collectively the "Geese Police Trade Secrets") to help the franchisees succeed with their own businesses.  The training and other aspects of the Geese Police System are also designed to promote and enhance the value of the Geese Police Marks and to encourage uniformity among the franchisees operating under the Geese Police Marks, which itself is beneficial to successful promotion of the Geese Police Marks and the franchisees operated thereunder.

26.    Included among the benefits of the Geese Police System provided and/or made available to franchisees, such as Defendants, are the following:  (a) providing initial, additional, and refresher training, along with periodic courses and seminars, including training for border

collies to chase away the geese in a lawful manner; (b) making available to franchisee advertising and promotional materials; (c) providing operating manuals and periodic updates thereto, which contain, among other things, Geese Police standards, specifications, procedures, and operating techniques; (d) maintaining a continuing advisory relationship, including written communication and telephone consultation in the areas of advertising, marketing, training and dog care and general business operations for use by all franchisees; and (e) hosting a website that lists the current franchise locations, provides the contact information, websites, and biographical information of the current franchisees, and allows potential customers to get in touch with the Franchisor for services in their location.

27. Since the Franchisor began franchising, Franchisor has licensed the Geese Police Marks to its franchisees for use in specific geographic areas for the term of their franchise agreements. Franchisor also grants its franchisees the right to enjoy the benefits of using the Geese Police System and the Geese Police Trade Secrets.

28. Franchisees are not, however, authorized to use the Geese Police Marks, the Geese Police System, or the Geese Police Trade Secrets following the termination of their franchise agreements.

29. Franchisor has for many years spent large sums of money marketing and promoting the Geese Police Marks that have become identified with the Franchised Business by consumers and which use specially developed business methods, which are proprietary and comprise the Geese Police System.

30. The Franchised Business has been the subject of significant national media coverage including without limitation NBC News, The Washington Post and Washington Times.

31.     As a result of this extensive marketing and promotion, valuable goodwill has been developed in the franchised areas throughout the United States among consumers for the Geese Police Marks and the Geese Police System for services provided under the Geese Police Marks and the Geese Police System, identifying Franchisor as their sponsor and source.

### *Defendants Became a Franchisee and Operated as Geese Police of DC*

32.     Defendant Double D has been a franchisee since 2007.  The Individual Defendants executed the Franchise Agreement on behalf of Defendant Double D on or about December 14, 2007.  A true and correct copy of the Franchise Agreement is attached hereto as **Exhibit E** and incorporated herein by reference.

33.     GPI entered into a five-year extension of the Franchise Agreement with Defendant Double D on or about December 14, 2012.  A true and correct copy of the Amendment for Renewal of Franchise Agreement is attached hereto as **Exhibit F** and incorporated herein by reference. Defendant David and Defendant Doug, as the co-owners of Double D, executed the Amendment for Renewal.  Both the December 14, 2007 Franchise Agreement and the December 14, 2012 Addendum are referred to together herein as the "Franchise Agreement."

34.     In the Franchise Agreement, the parties agreed that the "Franchisee shall conduct the business operations of the Franchised Business only at 6602 Degan Drive, Burke, Virginia 22015 (the 'Approved Location')" and "within the following areas: Arlington and Fairfax Counties, Virginia with the exception of the towns of Reston and Herndon (the 'Protected Territory')."

35.     Since 2017, Defendants have continued to operate as a franchisee in the Protected Territory, as evidenced by their continuing use of the Geese Police System and Geese Police Marks.  Defendants have, with Franchisor's permission, since expanded the Protected Territory to

include Washington DC, the Fairfax, Arlington, Loudon and Clarke Counties of Virginia, and the towns of Herndon and Reston Virginia.

36. Under Exhibit C to the Franchise Agreement, entitled Guarantee, Indemnification, and Acknowledgement, the Individual Defendants personally guaranteed that the obligations of Defendant Double D under the Franchise Agreement would be performed, and acknowledged and agreed, among other things, to be bound individually by the franchisee's obligations upon termination and to the covenant not to compete (the "Guarantee").

37. Under the Franchise Agreement, Franchisor granted Defendants the right (a) to establish and operate a franchised business under the System and using the Proprietary Marks and (b) to use the Proprietary Marks and the System solely in connection therewith for an initial term of five (5) years and, subject to conditions contained in the Franchise Agreement, to renew the Franchise Agreement for two additional consecutive terms of five (5) years.

38. In exchange, Defendants agreed to pay an initial franchise fee and a monthly royalty fee. Defendants further agreed to all other provisions of the Franchise Agreement, including the obligation to cease operating the Franchised Business and to cease using the Geese Police System and Geese Police Marks upon termination of the Franchise Agreement.

39. With the consent of Franchisor and under the terms and conditions of the Franchise Agreement, Defendants operated a Franchised Business in the Protected Territory, as more fully described in the Franchise Agreement.

40. During the sixteen-year period, Franchisor provided, or made available, to Defendants initial and ongoing training; trained border collies for use in the Franchised Business; a copyright-protected Confidential Operating Manual and periodic updates; operations and business support via direct telephone and email contact with Franchisor's Founder and President

David C. Marcks; periodic visits aimed at increasing business opportunities; and regularly scheduled sales demos for prospective clients, including a pitch by David C. Marcks at the National Mall to help Defendants land that business.

41.     In essence, Defendants learned everything they know about the Franchised Business as a result of their participation in the Geese Police System and the training, business development, and operations support that they received from Franchisor.

42.     Defendants operated their business as one the franchisees of GPI and enjoyed the benefits of use of the Geese Police Marks, the Geese Police System and the Geese Police Trade Secrets for sixteen years.

43.     Franchisor has fully performed its obligations under the Franchise Agreement as evidenced by the complete absence of default notices from the Defendants.

***Franchisor Terminated the Franchise Agreement for Defendants' Numerous Defaults Under the Franchise Agreement***

44.     In a letter dated May 1, 2023, Franchisor notified Defendants of their defaults under the Franchise Agreement for failing to perform certain obligations thereunder and provided them an opportunity to cure those defaults (the "Notice of Default").  A true and correct copy of the Notice of Default is attached hereto as **<u>Exhibit G</u>** and incorporated herein by reference.

45.     As set forth in the Notice of Default, since January 1, 2023, Defendants have: (a) failed to make payment of the continuing royalty fees required under Section 4.3 of the Franchise Agreement and to deliver the reports required under Section 10.3 of the Franchise Agreement; (b) failed to deliver the reports and financial statements required under Section 10.3.1 of the Franchise Agreement; (c) failed to deliver the financial statements required under Section 10.3.2 of the Franchise Agreement; and (d) failed to deliver the insurance certificates required under Sections 12.3 and 12.4 of the Franchise Agreement.

46.     Defendants have also failed to pay at least the amount of $41,584.43 for royalty fees and merchandise as shown on Exhibit A to the Notice of Default.

47.     Pursuant to the Section 14.3 of the Franchise Agreement, Franchisor provided Defendants with thirty (30) days from receipt of the Notice of Default to cure the defaults listed therein and advised that, if such cure is not timely made, the Franchise Agreement would terminate automatically and immediately.

48.     Defendants failed to cure the defaults within thirty days of the Notice of Default and thereby failed to prevent the termination of the Franchise Agreement.

49.     By the Notice of Default, Franchisor required Defendants to fully comply with their post-termination obligation set forth in Sections 15 and 16 of the Franchise Agreement and expressly enumerated in the Notice of Default.

50.     Defendants have not complied with their post-termination obligations.

51.     Instead, Defendants have, among other things, continued to operate the Franchised Business and use the Geese Police Marks and Geese Police System, and they have also refused to disassociate themselves completely from the Franchised Business, to refrain from competing in business with the Franchisor, and to pay the Franchisor all amounts due and payable under the Franchise Agreement.

***Defendants Are Legally and Contractually Obligated to Discontinue Using the Geese Police Marks and the Geese Police System***

52.     Upon termination of the Franchise Agreement, Defendants are required immediately to discontinue all use of the Geese Police Marks and the Geese Police System and to take all necessary steps to disassociate themselves from these items.

53.     Section 15.2 of the Franchise Agreement provides:

Franchisee shall immediately and permanently cease to use, in any manner

whatsoever, any confidential methods, procedures, and techniques associated with the System; and the Proprietary Mark "Geese Police" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System. In particular, Franchisee shall cease to use, without limitation, all signs, advertising materials, displays, stationery, forms, products, and any other articles which display the Proprietary Marks.

**Exhibit E, Franchise Agreement.**

54. Despite the termination of the Franchise Agreement, Defendants continue to use, to Franchisor's detriment, the Geese Police Marks and the Geese Police System.

55. Even though they now purport to operate as "Capital Goose Control," Franchisor has confirmed that Defendants have not completely disassociated themselves and continue to operate as if they were an authorized Franchised Business.

56. Among other things, Defendants maintain a social media presence for "Capital Goose Control," which still uses the name "Geese Police" in its URL (https://www.facebook.com/GeesePoliceDC) and contains photographs that depict the Geese Police Marks, as depicted below:





57.     Defendants also maintain a social media presence for "Geese Police DC" on Twitter (https://twitter.com/geesepolicedc?lang=en) which both reference the website of the Franchisor (http://www.geesepoliceinc.com) on its page:



58.     The Individual Defendants also all have a personal social media presence in which they hold themselves out as being affiliated with Geese Police.  Defendant Doug, for example, continues to maintain an Instagram page (https://www.instagram.com/brothagoose), which likewise depicts the Geese Police Marks throughout its page as depicted below.





59.     For their part, the personal LinkedIn profiles for Defendant Dave (https://www.linkedin.com/in/dave-marcks-19720a36/) and Defendant Gay (https://www.linkedin.com/in/michael-gay-51b843b/) both list themselves as the Owner of Geese Police of DC.

60.     Defendants have therefore made only a half-hearted attempt to disassociate themselves from the Franchised Business, and their purported efforts amount to nothing more than a tactical retreat as Defendants created their new, cover-up business only in response to the termination of the Franchise Agreement—and a likely federal lawsuit.

61.     Defendants' continued use of the Geese Police Marks and the Geese Police System contravenes their post-term obligations under the Franchise Agreement and the Lanham Act.

62.     Absent relief, nothing will stop Defendants from resuming infringement once they are no longer under the shadow of litigation.

### *Defendants are Barred by the Covenant Not to Compete to Operate any Business that Uses or Sells Border Collies for the Purpose of Canadian Geese Control*

63.     Defendants have likewise continued to service the same customer accounts using the Geese Police Marks and Geese Police System that they serviced prior to the termination of the Franchise Agreement.

64.     Under Section 16.3 of the Franchise Agreement, upon termination of the Franchise Agreement, Defendants are barred, for a period of two (2) years, either directly or indirectly owning, maintaining, operating, engaging in, being employed by, providing assistance to, or having any interest in (as an owner or otherwise) any business that: "(i) offers products or services which are the same as or similar to the products and services offered by the Franchised Business under the System; and (ii) is, or is intended to be, located at or within: [1] the county or municipality in which the Approved Location is located; or [2] the Protected Territory; or [3] one

hundred fifty (150) miles of the Approved Location; or [4] one hundred fifty (150) miles of any business operating under the Proprietary Marks; provided, however, that this provision shall not apply to the operation by Franchisee of any business under the System which may be franchised by Franchisor to Franchisee."

65.    Defendants' continued operation of the Geese Police business in the same territory as the Protected Territory directly violates the covenant not to compete contained in the Franchise Agreement.

### *Franchisor Has Suffered Irreparable Harm and Other Damages*

66.    Unless and until Defendants are permanently enjoined from using the Geese Police Marks and the Geese Police System, from breaching the covenant not to compete contained in the Franchise Agreement, from misappropriating the Geese Police Trade Secrets, and from unfairly competing with the Franchisor, Franchisor and its franchisees are being and will continue to be irreparably harmed in the nature of:

(a)    Confusion of customers who intend to do business with a legitimate Geese Police franchisee;

(b)    Harm to customer goodwill and the confidence and trust customers repose in Franchisor and its franchisees;

(c)    Disturbance of Franchisor and its franchisees' relationships with customers;

(d)    Harm to Franchisor's business reputation;

(e)    Loss of confidence of Franchisor's remaining franchisees which rely on Franchisor to enforce covenants not to compete;

(f)    Loss of the integrity of the Geese Police Marks and the Geese Police System for which Franchisor's remaining franchisees continue to pay under their respective Franchise Agreements; and

(g)    Harm to the continued viability of Franchisor's franchise system.

67.     In addition, irreparable harm is resulting from Defendants' breach of their covenant not to compete.  Defendants' continued operation of their business interferes with Franchisor's ability to continue the Franchised Business in the Protected Territory through an existing or new franchisee.

68.     Moreover, it is typical for other franchisees to monitor the actions of Franchisors in response to franchisees like Defendants that continue to operate a business in violation of the covenant not to compete of the Franchise Agreement.  This is particularly true when the former franchisee has been in the system for a substantial period of time.

69.     If Defendants are permitted to breach their covenant not to compete their breach will establish a dangerous precedent and potentially encourage other franchisees to "break away," leave the Geese Police System with impunity, and continue to operate their existing businesses under a different name at or near the location of their former Franchised Business.  This will also prevent Franchisor from providing geese control services to the former customers of Defendant Double D.  All of this conduct by Defendants causes an irreparable loss of customer goodwill associated with the Geese Police Marks and the Geese Police System and the businesses operated thereunder.  The value of being part of the franchise network of Franchisor and paying royalty fees is greatly diminished if franchisees may run competing business both during and after the termination of the Franchise Agreement.

## COUNT I: TRADEMARK AND SERVICE MARK INFRINGEMENT UNDER SECTION 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

70.     Franchisor incorporates by reference each of the allegations contained in Paragraphs 1 through 69 of the Complaint as if each was separately restated here.

71.     Defendants are currently using the Geese Police Marks and the Geese Police System even though the Franchise Agreement has been terminated, and Franchisor no longer consents to Defendants' use of the Geese Police Marks and the Geese Police System.

72.     Defendants' conduct willfully violates their obligations to Franchisor and flagrantly violates the Lanham Act.

73.     Defendants' use of the Geese Police Marks in connection with the operation of their business is likely to cause confusion or mistake in the minds of the public and cause purchasers to believe that the services being offered or intended to be offered were the services of Franchisor, and thus constitute an infringement of Franchisor's trademark and service mark rights.

74.     Defendants' infringement was and is a willful attempt to deceive the public, trade upon the goodwill of Franchisor and cause irreparable harm to Franchisor.

75.     The conduct of Defendants constitutes fraud and deceit upon the consuming public in the United States.

76.     Said conduct has resulted and will continue to result in the loss of Franchisor's goodwill and have caused and will continue to cause Franchisor's irreparable injury.

77.     As a result of Defendants' intentional, willful and deliberate infringement of the Geese Police Marks, Franchisor is entitled to injunctive relief, damages, costs and attorneys' fees.

## COUNT II:  UNFAIR COMPETITION UNDER SECTION 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

78.     Franchisor incorporates by reference each of the allegations contained in paragraphs 1 through 77 of the Complaint as if each was separately restated here.

79.     Defendants are in the business of providing geese control through the use of trained border collies.

80.     Defendants are using the Geese Police Marks per se, and in a manner confusingly similar to the Geese Police Marks used by Franchisor and its franchisees.

81.     The business format currently used by Defendants is the same or closely related to the Geese Police System that has been developed by Franchisor and its predecessors.

82.     Defendants' continued use of Geese Police Marks and Geese Police System is likely to cause mistake or confusion in the marketplace in the minds of purchasers and lead them to believe that Defendants' services are those of Franchisor or one of its authorized franchisees.

83.     Use by Defendants of the Geese Police Marks and the Geese Police System in connection with its services constitutes unfair competition under the Lanham Act.

84.     Defendants are deliberately attempting to trade upon the goodwill of Franchisor by selling and advertising their services as the services of Franchisor and continuing to provide services to the same customers who first engaged Defendants as a franchisee of the Geese Police Marks and Geese Police System.

85.     The acts of Defendants constitute a fraud and deceit upon the consuming public in the United States.

86.     Said conduct has resulted and will continue to result in the loss of Franchisor's goodwill and have caused and will continue to cause Franchisor's irreparable injury.

87.     As a result of Defendants' intentional, willful and deliberate infringement of the Geese Police Marks, Franchisor is entitled to injunctive relief, damages, costs and attorneys' fees.

## COUNT III:  BREACH OF FRANCHISE AGREEMENT – VIOLATION OF THE COVENANT NOT TO COMPETE

88.     Franchisor incorporates by reference each of the allegations contained in paragraphs 1 through 87 of the Complaint as if each was separately restated here.

89.     Defendants have violated and are continuing to violate their covenant not to compete in the Franchise Agreement by operating a geese control business using trained border collies.  This business is being operated within Defendants' former Protected Territory, as defined in the Franchise Agreement because it is being operated at precisely the same location as the business formerly authorized to operate pursuant to the Franchise Agreement.

90.     The conduct of Defendants is willful, intentional and unprivileged, and has caused and is continuing to cause irreparable harm as well as monetary damages to Franchisor.

91.     As a result of Defendants' intentional, willful and deliberate breach of contract, Franchisor is entitled to injunctive relief, damages, costs and attorneys' fees.

## COUNT IV:  BREACH OF FRANCHISE AGREEMENT – VIOLATION OF POST-TERMINATION OBLIGATIONS

92.     Franchisor incorporates by reference each of the allegations contained in paragraphs 1 through 91 of the Complaint as if each was separately restated here.

93.     As the Notice of Default stated, Defendants were required upon termination to comply with their post-termination obligations, as set forth in Section 15 of the Franchise Agreement, including, without limitation, to (a) cease to operate the Franchised Business; (b) disassociate from the Franchised Business; (c) pay all sums due and owing to Franchisor, including, without limitation, past due royalties, attorneys' fees, and liquidated damages to the Franchisor in accordance with the formula set forth in the Franchise Agreement; (d) deliver to Franchisor the customer lists relating to the Franchised Business; (e) return all material containing the confidential information of the Franchisor; and (f) sell to Franchisor, pursuant to Section 15.8 of the Franchise Agreement, all of the items purchased by Franchisee from or through Franchisor.

94.     Defendants have failed to comply with these remaining post-termination obligations in breach of the Franchise Agreement.

95. As a result of Defendants' intentional, willful and deliberate breach of contract, Franchisor is entitled to injunctive relief, damages, costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, GPI, LLC demands judgment in its favor and against Defendants with respect to all Counts of the Complaint as follows:

A. That Defendants and their officers, owners, agents, servants, employees, attorneys, and all persons in active concert or participation with them be permanently enjoined from using the Geese Police Marks, Geese Police Trade Secrets, and the Geese Police System, or any elements thereof, in connection with the operation of any business that offers products or services which involve the inhabitation of property by, or control of, birds and waterfowl, including but not limited to the business currently being operated in the Protected Territory, as more fully described in the Franchise Agreement.

B. That Defendants be required to make such changes in the signage of all vehicles, cease using any articles or other instrumentalities that contained the Geese Police Marks, and cease any communications that would identify Defendants are being associated with the Franchisor.

C. That Defendants be required to notify all of its former customers in a written communication approved by Franchisor that they are no longer conducting a geese control business using trained border collies and request each such customer to contact the Franchisor if they are interested in continuing such service.

D. That Defendants and their officers, owners, agents, servants, employees, attorneys, and all persons in active concert or participation with them be permanently enjoined for a period of two (2) years from the date of entry of such injunction from, directly or indirectly, conducting or operating a birds and waterfowl control business in (i) the county or municipality in which the

Approved Location is located; (ii) the Protected Territory, as modified by the parties; (iii) within 150 mile radius of the Approved Location; and (iv) within a 150 miles of each of the Franchised Businesses of the franchisees of the Franchisor.

E.      That Defendants be permanently enjoined from effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the directives of the injunction.

F.      That Defendants be required to return to Franchisor the customer lists, Manual, and all other records, correspondence, and instructions containing confidential information relating to the operation of the Franchised Business (and any copies thereof) to Franchisor.

G.      That Defendants be required to sell to Franchisor, pursuant to Section 15.8 of the Franchise Agreement, all of the items purchased by Franchisee from or through Franchisor.

H.      That Defendants be required to assign all Franchisee's contracts with its customers to Franchisor.

I.      That Defendants be required to cancel any assumed name registration or equivalent registration obtained by Franchisee which contains the mark "Geese Police" or any other Proprietary Marks

J.      That Defendants be required to make a verified report to the Court within thirty (30) days setting forth all actions taken by the Defendants to comply with the injunction and the relief granted herein and dates such actions were taken.

K.      That GPI be awarded compensatory and liquidated damages in an amount to be proven at trial.

L.      That GPI be awarded treble damages, statutory damages, and all other legal and equitable relief available under the Lanham Act.

M. That GPI be awarded its reasonable costs and expenses, including reasonable attorneys' fees as authorized under the Franchise Agreement.

N. That GPI be given such other and further relief as the Court may deem just and proper.

_s/_ Karima Tawfik, Esq.

Karima Tawfik, Esq.
VSB No. 96541
Attorney for GPI, LLC
Buchanan Ingersoll & Rooney PC
1700 K Street, NW, STE 300
Washington, D.C. 20006
Telephone: (202) 452-7996
Fax: (202) 452-7989
karima.tawfik@bipc.com

Gretchen L. Jankowski, Esq.
(_pro hac vice forthcoming)_
Matthew C. Pilsner, Esq.
(_pro hac vice forthcoming_)
Attorneys for GPI, LLC
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite, 200
Pittsburgh, PA 15219
Telephone:  (412) 562-8800
Fax:  (412) 562 1041
gretchen.jankowski@bipc.com
matthew.pilsner@bipc.com